UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 19 Cr. 338 (BMC) |
| COREY FLAUM, | |
| Defendant. | |

## DEFENDANT COREY FLAUM'S SENTENCING MEMORANDUM

KRIEGER KIM & LEWIN LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
Tel.: (212) 390-9550

*Attorneys for Corey Flaum*

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .................................................................................. 1

II.  COREY'S LIFE AND BACKGROUND ............................................................... 2

    A.  Childhood and Education ............................................................................ 2

    B.  Family ............................................................................................................ 3

    C.  Community Ties and Contributions ............................................................ 6

    D.  Professional History .................................................................................... 8

    E.  Impact of the Case on Corey and His Family .......................................... 9

III.  THE OFFENSE CONDUCT ................................................................................. 9

IV.  COREY'S COOPERATION ................................................................................ 10

V.  A NON-INCARCERATORY SENTENCE IS APPROPRIATE ...................... 12

    A.  The Guidelines Should Not Dictate Corey's Sentence ........................... 13

    B.  Corey's History and Characteristics Favor a Time-Served Sentence ......... 15

    C.  Corey Has Accepted Responsibility for His Actions and Cooperated with the Government to an Extraordinary Extent ...................................... 17

    D.  A Non-Incarceratory Sentence Would Be Consistent with Comparable Cases ......... 18

    E.  Corey Will Not Reoffend ......................................................................... 20

VI.  CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*In re Igor Chernomzav*,
 CFTC Dkt. No. 19-31 (Sept. 30, 2019) ........................................................................18

*In re Jonathan Brims*,
 CFTC Dkt. No. 17-13 (Mar. 30, 2017) ........................................................................18

*In re Kevin Crepeau*,
 CFTC Dkt. No. 19-05 (Jan. 31, 2019) .........................................................................18

*In re Michael D. Franko*,
 CFTC Dkt. No. 18-35 (Sept. 19, 2018) .......................................................................18

*In re Randy Chen*,
 CFTC Dkt. No. 22-35 (Sept. 26, 2022) .......................................................................18

*In re Simon Posen*,
 CFTC Dkt. No. 17-20 (July 26, 2017) .........................................................................18

*In re Stephen Gola*,
 CFTC Dkt. No. 17-12 (Mar. 30, 2017) ........................................................................18

*Pepper v. United States*,
 562 U.S. 476 (2011).....................................................................................................14

*United States v. Adelson*,
 441 F. Supp. 2d 506 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x 93 (2d Cir. 2008) .................21

*United States v. Bases*,
 No. 18 Cr. 048 (JZL) (N.D. Ill.).........................................................................13, 19, 20

*United States v. Bradford*,
 645 F.2d 115 (2d Cir. 1981)....................................................................................20, 21

*United States v. Chanu*,
 18 Cr. 035 (JJT) (N.D. Ill.) ..........................................................................................19

*United States v. Coscia*,
 14 Cr. 551 (HDL) (N.D. Ill.)........................................................................................19

*United States v. Edmonds*,
 18 Cr. 239 (RNC) (D. Conn) ..................................................................................19, 20

*United States v. Emmenegger*,
 329 F. Supp. 2d 416 (S.D.N.Y.)...............................................................................21, 22

*United States v. Gupta*,
    904 F. Supp. 2d 349 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014) ................14, 21

*United States v. Johnson*,
    No. 16 Cr. 457 (NGG), 2018 WL 1997975 (E.D.N.Y. Apr. 27, 2018) ............................14

*United States v. Liew*,
    17 Cr. 001 (CRN) (N.D. Ill.) ...........................................................................................20

*United States v. Lundberg*,
    990 F.3d 1087 (7th Cir. 2021) ........................................................................................13

*United States v. Malki*,
    609 F.3d 503 (2d Cir. 2010)............................................................................................13

*United States v. Mohan*,
    No. 18 Cr. 610 (GHM) (S.D. Tex.)..................................................................................20

*United States v. Pacilio*,
    No. 18 Cr. 048 (JZL) (N.D. Ill.)......................................................................................19

*United States v. Parris*,
    573 F. Supp. 2d 744 (E.D.N.Y.) .....................................................................................14

*United States v. Smith*,
    No. 19 Cr. 669 (EEC) (N.D. Ill.) ...........................................................................1, 11, 12

*United States v. Trunz*,
    No. 19 Cr. 375 (WFK) (E.D.N.Y.) ......................................................................13, 19, 20

*United States v. Vorley*,
    18 Cr. 035 (JJT) (N.D. Ill.) .............................................................................................19

*United States v. Wernick*,
    691 F.3d 108 (2d Cir. 2012)............................................................................................14

**Statutes**

15 U.S.C. § 78*c*(a)(39)(F) ...........................................................................................................21

18 U.S.C. § 3553(a) ...............................................................................................................2, 14

7 U.S.C. § 13(a)(2)......................................................................................................................1

U.S.S.G. § 2B1.1....................................................................................................................13, 14

**Other Authorities**

FINRA By-Laws ........................................................................................................................21

iii

## I.      PRELIMINARY STATEMENT

Corey Flaum is a kind and generous man with a long history of good works.  He is beloved by his family and an integral member of his community.  A former precious metals trader, Corey is before the Court having pled guilty to attempted price manipulation in violation of 7 U.S.C. § 13(a)(2).  Corey engaged in a practice known as spoofing, which involves the placement of non-genuine orders for the purpose of moving the market in a direction favorable to one's trading position.[1]  The offense conduct was undoubtedly serious.  But Corey's conduct since being approached by law enforcement has been nothing short of exemplary.  From his first interaction with law enforcement, he has taken full responsibility for his actions.  Over the past four years, he has cooperated extensively with the government, disclosing his wrongdoing and assisting in the investigation of others.  Last summer, over the course of two days, Corey testified as a cooperating witness in *United States v. Smith*, No. 19 Cr. 669 (EEC) (N.D. Ill.), which resulted in multiple convictions for spoofing-related misconduct.  Corey's cooperation has also contributed to a corporate settlement worth over $60 million, ensuring that victims of Corey's conduct and the conduct of others were appropriately compensated.  In short, Corey is a model cooperator who has gone to tremendous lengths to make amends for his wrongdoing.

Corey is blessed with an excellent support network and possesses the education and skills to be a highly productive member of society.  However, since agreeing to cooperate in 2019, Corey has had to put much of his life on hold given the uncertainty of having to testify in public trials and the prospect of being sent to prison.  Now that his criminal case is coming to an end, Corey is poised to start anew as soon as he is given that chance.  In light of Corey's history and

---

[1] When spoofing, a trader looking to buy places non-genuine sell orders to create the illusion of supply and artificially move prices lower.  *See* PSR ¶ 6.  When looking to sell, the trader places non-genuine buy orders to create the illusion of demand and artificially move prices higher.  *See id.*

characteristics, his extraordinary cooperation, sentences in other spoofing cases, and the lack of need for further deterrence, we respectfully submit that a non-incarceratory sentence would serve the statutory purposes of sentencing under 18 U.S.C. § 3553(a) and the interests of justice.

## II. COREY'S LIFE AND BACKGROUND

### A. Childhood and Education

Corey was born in New Rochelle in 1977.  He grew up in Nassau County.  His mother, Susan, worked (and continues to work) as a nurse care management supervisor.  His father, Neil, ████████████████, was a lawyer.  Corey has a sister, Sabrina, who is two years his senior.

Corey's parents divorced when he was five years old.  After the divorce, he and his sister lived with their mother.  Although Corey and Sabrina sometimes visited their father on weekends, he was largely absent from their lives.  But Corey has always had a close bond with his mother, and Corey's sister describes him as her "one constant in life" – the "only person [she] knew who would always be on [her] side."  Ex. B, Sabrina Appelbaum Letter.  Corey's childhood friend, Neil, "was always impressed by how much support [Corey] gave to his mother and sister."  Ex. H, Neil Harrison Letter.

Growing up, Corey was a gifted athlete and a hard worker.  As a boy, he played Little League.  In high school, he played basketball and tennis.  He was a good student, with a particular aptitude for math.  He tutored other students, including his childhood friend, Joe.  *See* Ex. G, Joseph Chu Letter.  During summers, Corey worked as a camp counselor, tennis instructor, valet, and as a cabana boy at the Concord Hotel in the Catskills.  ████████████
████████████████████████████████████████████████████
████████████████████████████████████

Corey attended college at the University of Michigan, where he earned a bachelor's degree in business administration.  At Michigan, he was active in student life, playing intramural

racquetball, basketball, football, wallyball, and softball, and even wrestling for a season.  Corey also wrote articles about local restaurants for the school newspaper.

**B.      Family**

Corey and his wife, Alyssa, have been happily married for 19 years and are devoted parents to their three children: ████████████████████████████ Corey and Alyssa met for the first time in middle school, started dating in high school, and got married on Valentine's Day in 2004.  Alyssa describes Corey as her best friend, on top of being "caring, attentive, selfless, loving, warm and intelligent."  Ex. A, Alyssa Flaum Letter.

Having grown up with an absent father, Corey "wanted to make sure to create a different type of environment for his wife and children," one where Corey was "around for everything; every school show, science fair and sporting event."  *Id*. ████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████
████████████████████ Corey takes great pride in his children and their accomplishments and is present and supportive in their lives.

Corey is close with his mother, Susan, and stepfather, Tim, whom his mother married in 1998.  Tim considers Corey "the son [he] never had the privilege to have."  Ex. D, Tim Longshore Letter.  Susan and Tim have a house near Corey's in Florida, and they are a regular presence in Corey's life, as is Corey's father-in-law, Stephen. ██████████████████
██████████████████████████ Corey stepped up to "make[ ] sure [his father-in-law was] taken care of," helping him around his house, getting him meals, and giving him haircuts.  Ex. A, Alyssa Flaum Letter

Corey's sister describes him as "the most devoted uncle" to her three children.  Ex. B, Sabrina Appelbaum Letter.  Corey is also close with his mother's youngest brother, Richard, and his wife, Alina, as well as their four children.  In his letter to the Court, Richard writes that Corey is "widely known in the community for his extreme care and courtesy toward others" and "possesses qualities that are increasingly rare in today's world – genuine appreciation for community and human problems, civility, and kindness."  Ex. E, Richard Hendler Letter.

Since he was young, Corey has always gone out of his way to keep in touch with and support the older members of his family.  Corey's paternal grandmother, Myra, is 97 years old, and Corey "frequently calls her to say hi and share stories about his family."  Ex. C, Susan Flaum Letter.  ████████████████████████████████████████████

████████████████  "she will always feel his warmth and love."  *Id*.  ██████████████

███████████████████████████████████████████████████  Pearl "would always boast about how Corey would come and visit with his toolbox and hang a picture, fix a leaky faucet or change a light bulb."  Ex. B, Sabrina Appelbaum Letter.

████████████████████████████, Corey "worked very diligently and with forgiveness in his heart to reconcile with his father," despite their past differences.  Ex. D, Tim Longshore Letter.  Because of his absence during Corey's childhood, Corey had a complicated relationship with his father.  At times, they went years without speaking, and Corey's father did not attend Corey's wedding.  Nevertheless, Corey updated his father on major life events, such as the birth of his children, and reconnected with his father before the birth of his daughter, ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. B, Sabrina Appelbaum Letter.  Despite their complicated history, "Corey displayed a dedication [to his father] rarely seen."  Ex. D, Tim Longshore Letter.

Corey and his family also have a close relationship with Natalie Perecman, a young woman whom they first met when she was about nine years old.  Natalie describes Corey as "one of the most kindhearted, caring, compassionate individuals [she has] ever had the good fortune of knowing."  Ex. F, Natalie Perecman Letter.  For years, Corey's family has spent summers at Tyler Hill, a camp in Pennsylvania that Alyssa has attended and subsequently worked at since 1978.  They met Natalie there in around 2005. ██████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████  Ex. F, Natalie Perecman Letter.  As Natalie explains:

> Corey became a role model to me in every sense of the word, taking time out of his busy days to ask me about my days, helping me with my homework, driving me to friends' houses, and providing me with a listening ear and a shoulder to lean on when I needed it most.  During my high school years, ███████████████ ███████████████████  Corey provided me with the support and stability that I needed to recognize my own potential for success.  I can truly say with the utmost certainty that I would not be who I am today without Corey Flaum and his unwavering support, love, and encouragement.

*Id.*  Now a successful attorney in New York, Natalie remains an important part of Corey's family and is like an older sister to Corey's children.

As Corey's friend Neil puts it, Corey is "the ultimate family man."  Ex. H, Neil Harrison Letter.  "Despite having no daily male role model [as a child] Corey excels in fatherhood" and

"never misses any event in his children's lives[.]"  Ex. B, Sabrina Appelbaum Letter.  Members

of his family describe Corey as the "family peacemaker," the "center" of his extended family,

and the family's "glue and strength."  Ex. D, Tim Longshore Letter; Ex. H, Neil Harrison Letter;

Ex. A, Alyssa Flaum Letter.  He possesses an extraordinary commitment to bringing people

together and ensuring that the people in his life are well cared for.

### C.    Community Ties and Contributions

Corey's kindness and instinct to help are not limited to his family.  Community and

charity are deeply important to Corey.  As Alyssa explains in her letter, Corey goes out of his

way to help "everyone he cares about – not only our immediate family but our friends, neighbors

and even our friends' friends and their families."  Ex. A, Alyssa Flaum Letter.

One of his primary passions is youth athletics.  He has devoted countless hours to

coaching.  From 2013 to 2019, Corey coached youth basketball, first with Syosset Basketball

League, then with the Amateur Athletic Union ("AAU") program, Long Island Elite.  In 2017,

Corey founded his own AAU program, New York Elite, in Nassau and Suffolk Counties.  These

were almost all unpaid, volunteer positions.

As a coach, Corey took great joy in driving the kids – both his and others' – to games and

tournaments, hosting barbecues and pizza parties, and making the children feel supported and

encouraged.  Corey took coaching "very seriously, trying to instill in his players the values of

consistent effort, hard work, team comradery and good sportsmanship."  Ex. J, Jordan Linn

Letter.  He regularly "spent extra hours working with kids" to "build the confidence they needed

to play."  Ex. A, Alyssa Flaum Letter.  Every child that Corey mentored "knew how special they

were because he always took a genuine interest in them."  *Id.*; *see also* Ex. H, Neil Harrison

Letter ("I saw how much [Corey] cared about the development of the kids on his team, imparting

advice and encouragement every step of the way.").  That interest extended to kids who could

not afford the costs of the league.  At times, Corey personally paid the fees for children whose families could not afford them, and even "pick[ed] those children up at their homes and transport[ed] them to practices and games," Ex. J, Jordan Linn Letter, sometimes driving hours out of his way to accommodate team members.  "Corey was always doing fundraisers to ensure everyone on his team could participate no matter their parent's socioeconomic status."  Ex. B, Sabrina Appelbaum Letter.  In addition to basketball, Corey has coached youth baseball and helped with his children's flag football teams.

Outside of coaching, Corey is also an excellent friend and neighbor.  He tutored his friend, Joe, in high school and, as an adult, he paid for Joe's meals and expenses to help him get through dental school.  Ex. G, Joseph Chu Letter.  According to Joe, Corey "is always willing to lend a helping hand whenever someone is in need."  *Id.*  Corey's childhood friend, Neil, describes Corey as "a truly amazing friend" who "always offers a listening ear and helpful advice," ███████████████████████████████████████████████.  Ex. H, Neil Harrison Letter. Corey's kindness extends to neighbors, as well.  ████████████████ ███████████████████████████████████  Corey immediately "made time to lend a helping hand," "fix[ing] things around the house and help[ing] solve whatever situation comes their way."  Ex. A, Alyssa Flaum Letter.  Corey has helped neighbors with "home maintenance issues" on "[c]ountless" occasions.  Ex. D, Tim Longshore Letter.

Corey also has a long history of charitable giving.  When Corey lived in New York, he donated annually to his temple.  When working with New York Elite, Corey ran fundraisers about three times a year to help fund the program.  A portion of that money also went to the V Foundation and Memorial Sloan Kettering.  For more than a decade, he has donated regularly to Children International and the V Foundation in a personal capacity.  In recent years, despite

experiencing financial difficulties, Corey has made monetary and in-kind donations to the Florida Breast Cancer Foundation, VVA, Children's Miracle Network Hospitals, the ASPCA, Soles4Souls, and the American Cancer Society, among other organizations.

### D.   Professional History

In his professional life, Corey strives to live by the same values that guide his personal life.  With the exception of the offense conduct, which we address below, he has.  In his work, Corey "strives to do things the right way, not the easy way."  Ex. I, James Slater Letter.

Corey has spent most of his career in finance.  After graduating from the University of Michigan in 1999, Corey joined the Institutional Sales and Trading Program at Cantor Fitzgerald.  Between 1999 and 2005, he worked in various roles at Cantor Fitzgerald, Goldman Sachs, Sidoti (a securities research firm), and Selz and MLC Capital (two related hedge funds). From 2006 to 2016, Corey worked as a precious metals trader, first at Bear Stearns, and later at Scotiabank.  The offense conduct occurred during Corey's time at Bear Stearns and Scotiabank. Scotiabank fired him in 2016 because of it.[2]

Despite his abilities and experience, Corey has struggled to find his footing professionally since Scotiabank fired him.  From 2016 to 2018, he worked as a broker, first for a firm called Sunrise Brokers and then for another called Market Securities.  He left Sunrise due to a lack of support for his business initiatives and was let go by Market Securities.  In April 2019, he took a job selling supplemental medical insurance for Colonial Life.  However, in July 2019, Corey pled guilty in this case, which required him to leave the insurance industry.  In October 2019, Corey began working as a contractor at Dynamic Capital, brokering future receivables sale and security agreements, a form of alternative financing for businesses that need working capital.

---

[2] Corey has not spoofed since being terminated from Scotiabank in 2016.

In June 2021, he left Dynamic Capital to focus on his own firm, A.C.K. Investments, which funds the types of deals that Corey brokered at Dynamic Capital.  Many of A.C.K.'s clients are small business owners who have difficulty making their payments on time.  But whenever he can, Corey gives them a break.  As Corey has throughout his life, he "put[s] the needs of others ahead of his own because he would rather experience hardship than cause another to do so."  *Id.*

E.     **Impact of the Case on Corey and His Family**

Corey's termination from Scotiabank and this case have greatly impacted Corey and his family.  He has been living in the shadow of his conduct since 2016. ████████████████ ████████████████████████  And he has been under near-continuous investigation.  In 2016, Scotiabank reported Corey to the CME Group Inc. (the "CME"), which culminated in a $35,000 fine by the CME in 2018.  In 2019, just as Corey was starting to get back on his feet, he was approached by law enforcement and shortly after pled guilty in this case, beginning what would be four years of cooperation, during which time his life has effectively been on hold.

Financial difficulties have accompanied his legal problems.  Since he was fired from Scotiabank, Corey has struggled to find work commensurate with his talents.  He has liquidated all of his retirement and investment accounts to keep his family afloat.  In 2019, no longer able to afford the New York area, Corey and Alyssa sold their home and moved the family to Florida into a home purchased by Corey's mother and stepfather.  While the family is now settled in Florida, the move required Corey's children to change schools and leave their friends behind. Corey and Alyssa continue to rely on financial support from family to get by.

III.    **THE OFFENSE CONDUCT**

Corey takes complete responsibility for the offense conduct – both in word and in deed. Not only has he admitted his conduct in connection with his plea, he described it in detail while

testifying in the *Smith* trial as a cooperating witness.  He has disclosed his conduct to the people close to him, "fully recogniz[ing] and comprehend[ing] the gravity of his poor judgment and the responsibilities he bears in rectifying his bad actions" and "express[ing] his deep remorse."  Ex. E, Richard Hendler Letter.  As Corey's wife, Alyssa, writes in her letter to the Court, Corey has been "forthcoming, cooperative and remorseful and has grown from the lessons learned."  Ex. A, Alyssa Flaum Letter.

Corey began spoofing in 2007 when he worked at Bear Stearns.  Corey learned the practice by observing a senior colleague, Gregg Smith, at whose trial Corey testified as a cooperating witness.  While Corey has always understood that the practice was deceptive, at the time he learned it from Smith and for many years after, he did not consider that it might be illegal.  It was practiced openly, without concealment, by senior personnel at Bear Stearns, which normalized the conduct for Corey.

Corey continued to spoof during his remaining tenure at Bear Stearns and throughout his time at Scotiabank.  In or around 2011, following the passage of the Dodd-Frank Act, Corey learned for the first time that spoofing was illegal.  However, as he has admitted, despite knowing that the practice was improper from that point onward, he continued to engage in the practice until he was fired from Scotiabank in 2016.

## IV.    COREY'S COOPERATION

Corey has cooperated extensively with the government.  In May 2019, agents from the Federal Bureau of Investigation ("FBI") visited Corey at his home at the crack of dawn and questioned him about his spoofing activity.  Corey spoke with the agents voluntarily for several hours and admitted to spoofing.  He did not lie or minimize his conduct.

After the FBI visit, Corey hired counsel and immediately offered to continue his cooperation, eventually entering into formal cooperation agreements with the Department of Justice ("DOJ") and the Commodity Futures Trading Commission ("CFTC").  Over the course of the next four years, Corey met with the FBI, DOJ, and CFTC on numerous occasions, answering questions about his conduct and the conduct of others.  As part of his cooperation, Corey analyzed countless trading records – both his own and others' – and substantially assisted the government in identifying and describing various approaches to spoofing.

In July 2022, Corey traveled to Chicago to testify over the course of two days in the criminal trial of Gregg Smith, Michael Nowak, and Jeffrey Ruffo in the Northern District of Illinois.  At trial, Corey described his own conduct in detail, both on direct and under cross-examination.  *See, e.g.*, Trial Tr. ("7/15 Trial Tr.") at 1799:12–18, *United States v. Smith*, No. 19 Cr. 669 (EEC) (N.D. Ill. July 15, 2022), ECF No. 770 ("I entered . . . a genuine order typically on one side of the market, and then entered orders opposite the market, whose purpose was to trigger other market participants to trade against that nongenuine order with the hope that the genuine order would get filled on the opposite side."); *id.* at 1801:11–15 (testifying that he spoofed "[o]n average, a few times per week" over a period of "ten years"); Trial Tr. ("7/18 Trial Tr.") at 1856:20–1857:13, *United States v. Smith*, No. 19 Cr. 669 (EEC) (N.D. Ill. July 18, 2022), ECF No. 771 (testifying that he continued to spoof after learning it was illegal because "it worked"); *id.* at 1984:19–21 (testifying on cross-examination that he "spoofed thousands of times").  He helped educate the jury on the practice of spoofing.  *See, e.g.*, 7/12 Trial Tr. at 1801:2–7 ("Spoofing is a trading practice that essentially sends signals to the market of fictitious supply or demand with the hopes that the market will respond accordingly and move against those orders to hopefully fill a genuine order.").  He analyzed and explained trading data.  *See,*

*e.g.*, 7/18 Trial Tr. at 1873:2–1875:19 (comparing an example of Corey's spoofing activity with trading activity by Smith, which Corey described as a "carbon cop[y]" of his own). And he testified about his first-hand knowledge of Smith's spoofing activity from when Corey and Smith were colleagues at Bear Stearns. *See, e.g., id.* at 1860:6–18 (testifying that he observed Smith spoofing "[s]everal times per week on average, some days more, some days less").

The government cited Corey's testimony repeatedly during its closing argument and rebuttal. *See, e.g.*, Trial Tr. at 3903:7–10, *United States v. Smith*, No. 19 Cr. 669 (EEC) (N.D. Ill. July 28, 2022), ECF No. 782 ("You heard from Corey Flaum who told you how he also used that same . . . pattern to spoof and how he watched Gregg Smith do the exact same thing while they sat together at Bear Stearns."); *id.* at 3915:4–6 ("Mr. Flaum explained that spoofing, when successful, moves the price artificially higher or lower."); *id.* at 3917:20–3918:1 (noting that Corey "saw Mr. Smith spoofing while sitting next to him at Bear Stearns" and identified spoofing activity by Smith that was a "carbon copy of his own"); *id.* at 3921:2–6 ("Mr. Flaum . . . told you how spoofing is a trading practice that essentially sends signals to the market of fictitious supply or demand with the hopes that the market will respond accordingly and move against those orders to hopefully fill a genuine order."). In short, he was a critical part of the government's case that resulted in the conviction of Smith and Nowak on multiple counts.

In addition, based in part on information provided by Corey, Scotiabank entered into a settlement with the government worth approximately $60 million in connection with the firm's unlawful trading activities.

## V.  A NON-INCARCERATORY SENTENCE IS APPROPRIATE

The Court should impose a non-incarceratory sentence with no fine or restitution. The other two cooperators in the *Smith* case have received non-incarceratory sentences. (And even absent cooperation, courts routinely impose sentences in spoofing cases that are significantly

below-Guidelines.)  Corey's history and characteristics, his complete acceptance of responsibility, his extraordinary cooperation, the need to avoid unwarranted sentencing disparities, and the lack of need for deterrence all weigh in favor of a non-incarceratory sentence.

### A.    The Guidelines Should Not Dictate Corey's Sentence

Probation calculates Corey's offense level as 23.  With a criminal history of I, this yields a recommended Guidelines sentence of 46 to 57 months.

While we object to one aspect of Probation's offense-level calculation – the application of the two-point sophisticated means enhancement – the recommended Guidelines range should not be a significant factor in determining Corey's sentence.[3]  As a general matter, "the rigidity and artificial precision of the Guidelines," *United States v. Malki*, 609 F.3d 503, 508 n.3 (2d Cir. 2010), often runs counter to the Court's ultimate responsibility: imposing a sentence that is

---

[3] The sophisticated means enhancement applies where "the offense . . . involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C).  Under the Guidelines, "sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* cmt. n.9(B). While we acknowledge that some courts have applied the enhancement in spoofing cases, *see, e.g.*, *United States v. Trunz*, No. 19 Cr. 375 (WFK), 2023 WL 4238517, at *4 (E.D.N.Y. June 28, 2023), we respectfully submit that it is inapplicable here.  In *United States v. Bases*, the court declined to apply the enhancement in a spoofing case, despite the fact that the defendants "placed false orders with the intent not to execute them to create the illusion of market activity to impact market prices," "engaged in coordinated spoofing," and "engaged in layered spoofing . . . plac[ing] multiple [s]poof [o]rders to create the illusion that multiple traders were interested in trading at a particular price point."  Order ("Bases Order") at 43, *United States v. Bases*, No. 18 Cr. 048 (JZL) (N.D. Ill. Mar. 6, 2023), ECF No. 734.  As the court noted in *Bases*, the sophisticated means enhancement only applies where the offense involved "greater 'planning or concealment' than a '*typical fraud of its kind*.'"  *Id.* at 42 (emphasis added) (quoting *United States v. Lundberg*, 990 F.3d 1087, 1097 (7th Cir. 2021)). The conduct in *Bases*, while perhaps complex or intricate when compared to other types of offenses, "was no more sophisticated than that involved in the typical spoofing scheme."  Bases Order at 43.  The same is true of Corey's conduct; it was no more sophisticated than typical spoofing.  Thus, in our view, the correct offense level is 21, which yields a recommended sentence of 37 to 46 months' imprisonment.

We also note that under the recently adopted Section 4C1.1, which takes effect in November, Corey would be entitled to a two-point reduction of his offense level because he has no criminal history points.  Thus, even with the sophisticated means enhancement, Section 4C1.1 would bring his offense level to 21 and his recommended Guidelines sentence to 37 to 46 months.

"sufficient, but not greater than necessary," to satisfy the objectives of sentencing.  18 U.S.C. § 3553(a).  This is especially true for Section 2B1.1, which is driven primarily by loss amount. As Judge Garaufis observed in *United States v. Johnson*, "the Sentencing Commission's loss-enhancement numbers do not result from any reasoned determination of how the punishment can best fit the crime, nor any approximation of the moral seriousness of the crime."  No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *3 (E.D.N.Y. Apr. 27, 2018); *see also United States v. Parris*, 573 F. Supp. 2d 744, 754 (E.D.N.Y. 2008) (describing the Guidelines range produced by Section 2B1.1 in a white-collar case as "a black stain on common sense").  The Guidelines themselves recognize that "[t]here may be cases in which the offense level determined under [Section 2B1.1] substantially overstates the seriousness of the offense," including where "the aggregate loss amount . . . is substantial but diffuse, with relatively small loss amounts suffered by a relatively large number of victims."  U.S.S.G. § 2B1.1 cmt. n.21(C).

Most notably here, the recommended Guidelines range fails to account for Corey's cooperation, based on which we expect the government to move for a downward departure pursuant to Section 5K1.1.  But the Guidelines also fail to consider important aspects of Corey's history and characteristics and the need for deterrence (or the lack thereof) in the context of the specific case, despite the fact that Section 3553(a) calls upon the Court to "judge the [defendant] as a whole." *United States v. Gupta*, 904 F. Supp. 2d 349, 354 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014); *see also Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (observing that "every convicted person" should be considered "as an individual" and "the punishment should fit the offender and not merely the crime" (internal quotation marks omitted)); *United States v. Wernick*, 691 F.3d 108, 118 (2d Cir. 2012) ("[T]he guideline recommendation is but one factor to be considered in selecting an appropriate sentence, and we have frequently emphasized

14

that a sentencing court has discretion to consider a broad range of information bearing on the history and characteristics of the defendant." (citation and internal quotation marks omitted)). Here, as in many cases, loss amount – despite being a major driver of the Guidelines calculation – is a flawed measure of culpability, especially since the loss was diffuse and mostly accrued to Corey's employers rather than Corey himself.[4]

**B.      Corey's History and Characteristics Favor a Time-Served Sentence**

Corey's history and characteristics are a compelling reason for leniency.  He is a man of exceptional character, as the letters submitted on his behalf attest.  The offense conduct, while serious, is greatly outweighed by the good he has done in his life.  Since being approached by the FBI in 2019, Corey has lived with the uncertainty of possible testimony in public trials and his eventual sentencing in this case.  His life has been in limbo.  A non-incarceratory sentence would allow Corey to start again, make amends for his conduct in the community, and continue supporting his family, which has struggled financially since Corey was fired in 2016.  Corey's character, support network, acceptance of responsibility, and cooperation give the Court every reason to believe that he will live a productive and law-abiding life going forward.

Corey is a kind, giving, and dependable person with a strong moral code.  Family has always been at the center of his life.  He grew up with an absent father, which taught him the value of family and drew him closer to the people who were present in his life.  The letters make clear how beloved Corey is by his family.  He is a wonderful father, husband, son, grandson, and uncle.  He is at the center of a loving and close-knit family.

---

[4] When successful, spoofing results in an increased profit to the trader to the detriment of market participants who trade at prices at which they otherwise might not have.  But at all relevant times, Corey was trading on behalf of his employers, not for his own account.  While increasing his profitability as a trader improved Corey's discretionary compensation, he did not get rich from the offense conduct.  The money largely went to Bear Stearns and Scotiabank.

Corey is deeply involved in the lives of his children. ████████████████
███████████████████████████████████████████, Corey
is a doting and ever-present father.  As Alyssa puts it, "Corey is the most amazing father to
[their] children and . . . they know it!"  Ex. A, Alyssa Flaum Letter.  Several other letters
similarly comment on Corey's relationship with his children.  *See, e.g.*, Ex. B, Sabrina
Appelbaum Letter (noting that Corey "excels in fatherhood"); Ex. H, Neil Harrison Letter
("[Corey] is, simply doing a great job parenting his . . . kids day-in and day-out.").

Corey's kindness and generosity extend outside of his family as well.  Corey coached
youth sports for many years, making a positive impact on many young lives.  Many of the letters
recount Corey's extraordinary mentorship.  *See* Ex. B, Sabrina Appelbaum Letter; Ex. A, Alyssa
Flaum Letter; Ex. J, Jordan Linn Letter; Ex. H, Neil Harrison Letter.  He helped build confidence
and fostered a community that taught the values of teamwork.  Notably, he ran numerous
fundraisers and personally covered some children's fees so that participation on his teams was
available to anyone who was interested, regardless of socioeconomic status.  *See* Ex. B, Sabrina
Appelbaum Letter; Ex. J, Jordan Linn Letter.



Natalie became like a member of Corey's

family, and she and Corey remain close.  Natalie writes that she "would not be who [she is] today without Corey Flaum and his unwavering support, love, and encouragement."  *Id.*

The Court should consider Corey's family and financial situation in determining an appropriate sentence.  It would be a tremendous hardship for Corey's wife, young children, mother, stepfather, and father-in-law if Corey were to receive a custodial sentence.  They depend on him in every sense.  But it would be particularly devastating financially.  Since Corey was terminated from Scotiabank in 2016, Corey and Alyssa have been forced to liquidate their retirement savings and have relied on family to cover their expenses.  In 2019, his family could no longer afford the cost of living in New York and moved to Florida into a house purchased by his mother and stepfather.  While they have settled into their new lives, finances remain strained.  Accordingly, Probation has concluded that Corey cannot afford a fine.  *See* PSR ¶ 69.[5]  Since 2020, Corey has made slow but meaningful progress in building a business, the success of which is essential for his family's financial future.  It is a one-man enterprise, and if Corey were incarcerated and therefore unable to manage it, the progress will be lost.

### C.   Corey Has Accepted Responsibility for His Actions and Cooperated with the Government to an Extraordinary Extent

As we expect the government to detail in its Section 5K1.1 motion, Corey's cooperation has gone above and beyond "substantial assistance."  Since the date of his first contact with the FBI, Corey has admitted his conduct and cooperated extensively with the government.  He

---

[5] In further support of Probation's conclusion, the PSR actually overstates Corey's total assets and net worth by $412,812.67 because it treats his home as wholly owned by Corey and Alyssa, when in fact they own half of it (with Corey's mother and stepfather owning the other half).  We identified this error after submitting our objections to Probation on July 14, 2023.  After accounting for this error, Corey's actual total assets and net worth are $1,172,906.35 and $856,129.05, respectively.

We do not expect the government to seek restitution.  *See* PSR ¶ 80 (as amended).

entered into cooperation agreements with the DOJ and CFTC and pled guilty within two months of the FBI contacting him.  He fully disclosed his own criminal activity and provided extensive assistance in the prosecution of others.  His cooperation spanned four years.  Not only did his information assist in multiple investigations, Corey testified over two days in the trial of Gregg Smith (his former colleague, from whom Corey learned how to spoof), Michael Nowak, and Jeffrey Ruffo, which resulted in convictions for Smith and Nowak.

      **D.**     **A Non-Incarceratory Sentence Would Be Consistent with Comparable Cases**

When Corey's case is viewed in the context of other spoofing cases, it is clear that he should receive a non-incarceratory sentence.  Criminal and civil spoofing cases are a relatively recent development.  The vast majority of traders who get caught spoofing do not face criminal charges, including those who engaged in the practice repeatedly over long periods of time.  *See, e.g.*, Order at 2, *In re Randy Chen*, CFTC Dkt. No. 22-35 (Sept. 26, 2022) (defendant spoofed on over 1,000 separate occasions); Order at 2, *In re Igor Chernomzav*, CFTC Dkt. No. 19-31 (Sept. 30, 2019) (same); Order at 1–2, *In re Kevin Crepeau*, CFTC Dkt. No. 19-05 (Jan. 31, 2019) (defendant spoofed over the course of almost three years); Order at 2, *In re Michael D. Franko*, CFTC Dkt. No. 18-35 (Sept. 19, 2018) (defendant spoofed "on an almost daily basis" during a 14-month period); Order at 2, *In re Simon Posen*, CFTC Dkt. No. 17-20 (July 26, 2017) (defendant spoofed "on thousands of occasions" over more than three years); Order at 1–2, *In re Jonathan Brims*, CFTC Dkt. No. 17-13 (Mar. 30, 2017) (defendant spoofed over an 18-month period); Order at 1–2, *In re Stephen Gola*, CFTC Dkt. No. 17-12 (Mar. 30, 2017) (same).

In cases where individuals have been criminally charged for spoofing, courts have routinely imposed lenient sentences well below the Guidelines range, even for defendants who have gone to trial.  Michael Coscia, the defendant in the first federal prosecution for spoofing, was sentenced to 36 months, despite having a Guidelines range of 70 to 87 months.  *See*

Judgment, *United States v. Coscia*, No. 14 Cr. 551 (HDL) (N.D. Ill. July 14, 2016), ECF No. 159; Sentencing Tr. at 22:12–13, *United States v. Coscia*, 14 Cr. 551 (HDL) (N.D. Ill. Jul. 13, 2016), ECF No. 162.  James Vorley and Cedric Chanu, former traders at Deutsche Bank, were both sentenced to a year and a day, despite facing Guidelines of 57 to 71 months.  *See* Amended Judgment, *United States v. Vorley*, 18 Cr. 035 (JJT) (N.D. Ill. Sept. 1, 2021), ECF No. 429; Sentencing Tr. at 25:7–8, *United States v. Vorley*, 18 Cr. 035 (JJT) (N.D. Ill. June 21, 2021), ECF No. 400; Second Amended Judgment, *United States v. Chanu*, 18 Cr. 035 (JJT) (N.D. Ill. Aug. 26, 2021), ECF No. 428; Sentencing Tr. at 7:10–11, *United States v. Chanu*, 18 Cr. 035 (JJT) (N.D. Ill. June 28, 2021), ECF No. 403.  Edward Bases and John Pacilio, traders who worked at multiple banks, were also sentenced to a year and a day, despite both facing Guidelines of 37 to 46 months.  *See* Judgment, *United States v. Bases*, No. 18 Cr. 048 (JZL) (N.D. Ill. Mar. 13, 2023), ECF No. 742; Judgment, *United States v. Pacilio*, No. 18 Cr. 048 (JZL) (N.D. Ill. Mar. 13, 2023), ECF No. 744; Bases Order at 45.  None of these defendants cooperated or accepted responsibility for their misconduct.

Cooperators like Corey have received non-incarceratory sentences.  The two other cooperators in the *Smith* trial – Christiaan Trunz and John Edmonds – were sentenced earlier this summer.  Like Corey, their conduct lasted for years.  *See* Gov't Mem. ("Edmonds Gov't Mem.") at 2, *United States v. Edmonds*, 18 Cr. 239 (RNC) (D. Conn. June 7, 2023), ECF No. 55; Gov't Mem. ("Trunz Gov't Mem.") at 1–2, *United States v. Trunz*, 19 Cr. 375 (WFK) (E.D.N.Y. June 23, 2023), ECF No. 25.  Unlike Corey, both were convicted of multiple counts.  *See* Judgment ("Edmonds Judgment"), *United States v. Edmonds*, 18 Cr. 239 (RNC) (D. Conn. June 15, 2023), ECF No. 57; Judgment ("Trunz Judgment"), *United States v. Trunz*, 19 Cr. 375 (WFK) (E.D.N.Y. June 29, 2023), ECF No. 27.  Their loss amount, which included the spoofing activity

of co-conspirators, was over $55 million.  *See* Edmonds Gov't Mem. at 1; Trunz Gov't Mem. at

2.  While Edmonds was a relatively minor player (with his trading causing a loss of $316,000),

the loss amount directly attributable to Trunz's spoofing activity ($3.6 million) was greater than

Corey's ($3.35 million).  *See* Edmonds Gov't Mem. at 1; Trunz Gov't Mem. at 3.  Both

Edmonds and Trunz received non-incarceratory sentences with no restitution.  *See* Edmonds

Judgment; Trunz Judgment.  Edmonds was fined $25,000, and Trunz received no fine.  *See*

Edmonds Judgment; Trunz Judgment.

Multiple similarly-situated defendants outside of this case have received comparable

sentences.  In 2021, David Liew, a former Deutsche Bank trader, was sentenced to time served,

with no fine or restitution.  Judgment, *United States v. Liew*, 17 Cr. 001 (CRN) (N.D. Ill. Nov.

17, 2021), ECF No. 95.  Like Corey, Liew engaged in spoofing for multiple years, but later

cooperated and testified against former colleagues.  *See* Gov't Mem. at 2–3, *United States v.

Liew*, 17 Cr. 001 (CRN) (N.D. Ill. Nov. 9, 2021), ECF No. 93.  Also in 2021, Krisha Mohan, a

cooperator who spoofed for multiple years and caused a loss amount of $32.5 million – almost

ten times Corey's loss amount of $3.35 million – was sentenced to one year of probation, with no

fine or restitution.  Judgment, *United States v. Mohan*, No. 18 Cr. 610 (GHM) (S.D. Tex. July

19, 2021), ECF No. 56; *see also* Gov't Mem. App. A at 3, *United States v. Bases*, No. 18 Cr. 048

(JZL) (N.D. Ill. Jan. 13, 2023), ECF No. 727.

### E.    Corey Will Not Reoffend

There is no risk of recidivism in this case.  Apart from the offense conduct, Corey has

lived a law-abiding life.  As the letters submitted to the Court demonstrate, he is a man of strong

character.  Furthermore, his acceptance of responsibility and cooperation are powerful evidence

of his rehabilitation.  *See United States v. Bradford*, 645 F.2d 115, 117 (2d Cir. 1981) ("A

defendant's cooperation may . . . be taken into consideration by a sentencing judge as a

mitigating factor tending to evidence his potential for rehabilitation.").

No additional punishment is needed to deter future misconduct.  This case and the conduct that led to it have already changed Corey's life – and the lives of his family members – in unalterable ways.  His termination from Scotiabank and his conviction in this case have destroyed his professional reputation.  *See Gupta*, 904 F. Supp. 2d at 355 ("As to specific deterrence, it seems obvious that, having suffered such a blow to his reputation, [the defendant] is unlikely to repeat his transgressions, and no further punishment is needed to achieve this result."); *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("With his reputation ruined by his conviction, it was extremely unlikely that [the defendant] would ever involve himself in future misconduct."), *aff'd*, 301 F. App'x 93 (2d Cir. 2008).

Furthermore, he is legally barred from the industry in which he committed the offense.  As a result of his conviction, Corey is subject to an automatic ten-year ban from associating with a member of a self-regulatory organization.  *See* 15 U.S.C. § 78*c*(a)(39)(F) (providing that "[a] person is subject to 'statutory disqualification' with respect to membership or participation in, or association with a member of, a self-regulatory organization, if such person . . . has been convicted of . . . any . . . felony within ten years of the date of the filing of an application for membership or participation in, or to become associated with a member of, such self-regulatory organization"); FINRA By-Laws art. III, §§ 3(b), 4 (providing that no person who is subject to "statutory disqualification" may be associated with a member firm).  Even when the ban expires, it is unlikely that a regulated firm would be willing to hire Corey.  Thus, even if Corey were otherwise inclined to reoffend – which he is not – he will never have the opportunity to do so.  *See United States v. Emmenegger*, 329 F. Supp. 2d 416, 428 (S.D.N.Y. 2004) (observing that the defendant "committed a crime particularly adapted to his chosen career" and that because "[t]hat

career is over . . . his potential to commit this particular type of crime has been eliminated").

In addition to these reputational and professional consequences, Corey may be subject to future penalties from the CFTC, whose case against Corey remains open.  Corey has also already been fined $35,000 by the CME.  Given these factors, there is no need for additional deterrence and no risk that Corey will reoffend.

## VI.    CONCLUSION

A non-incarceratory sentence is sufficient, but not greater than necessary, to satisfy the objectives of sentencing.  Corey is a model cooperator who has spent the past four years making amends for his conduct.  From his very first interaction with law enforcement, he admitted his conduct.  Since 2019, he has helped the government investigate his conduct and others'.  He provided crucial testimony over the course of two days in the *Smith* trial, resulting in multiple convictions.  His cooperation also contributed to a corporate settlement worth over $60 million.  Corey is a loving husband and father and an integral member of his community.  He has already suffered significant professional and reputational consequences as a result of his conduct.  Consistent with the sentences of other cooperators in spoofing cases, the Court should impose a non-incarceratory sentence with no fine and no restitution.

Dated:    August 9, 2023
        New York, New York

Respectfully submitted,

By: _____

KRIEGER KIM & LEWIN LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
Tel.: (212) 390-9550
Nick.Lewin@KKLllp.com
Jonathan.Bolz@KKLllp.com

*Attorneys for Corey Flaum*

22

*United States v. Corey Flaum*, No. 19 Cr. 338 (BMC)

**Index of Defendant's Sentencing Letters**

| Exhibit | Author |
|---------|--------|
| A | Alyssa Flaum |
| B | Sabrina Appelbaum |
| C | Susan Flaum |
| D | Tim Longshore |
| E | Richard Hendler |
| F | Natalie Perecman |
| G | Joseph Chu |
| H | Neil Harrison |
| I | James Slater |
| J | Jordan Linn |

# EXHIBIT A

The Honorable Brian M. Cogan

May 11, 2023

Re: Corey D. Flaum

Dear Judge Cogan:

Thank you for taking the time to read my letter.

I've known Corey D. Flaum since 1994, when we were both 17 years old.

He is my husband and my best friend. Corey is caring, attentive, selfless, loving, warm and intelligent. Corey and I have three children: ███████████████ ██████████████████████ Corey is the most amazing father to our children and believe me they know it! Family has always been so important to him. After growing up in a divorced home he wanted to make sure to create a different type of environment for his wife and children than the one he grew up in. He wanted to be around for everything; every school show, science fair and sporting event and would even volunteer at school functions just to see our kids in their school setting and to be involved in the community.

When our boys were growing up, he volunteered to coach their basketball teams. In addition to the carved-out time, Corey spent extra hours working with kids, not even his own, to help them build the confidence they needed to play. He loved every minute of it, and so did the players and their parents. Each kid that he coached and mentored knew how special they were because he always took a genuine interest in them.

████████████████████████████████████████████████ Corey was the one to hold our family together, including my dad. To this day, 11 years later, Corey continues to be our glue and strength and still makes sure my dad is taken care of – whether it comes to his home, meals, haircuts, or just being an integral part of our family. The thing that amazes me most about Corey, and one of the reasons why I love him so much, is that he takes on that role with everyone he cares about – not only our immediate family but our friends, neighbors and even our friends' friends and their families. That is who he is naturally. A few examples that stand out for me are…

████████████████████████████████████████████ From the day we met them, Corey has made time to lend a helping hand. He fixes things around the house and helps solve whatever situation comes their way. They know Corey is there for them.

Natalie became a part of the patchwork of our family and has remained so ever since.

When I learned about what happened in this case, I was obviously shocked and distraught. As you can sense, I adore, respect, and admire my husband. It was a very difficult time for us but something that we worked through together and are now stronger because of it. It might sound strange to say this but through this experience I have even more respect for Corey because of the way that he has handled the situation. He has been forthcoming, cooperative and remorseful and has grown from the lessons learned. He is an up-stander and will remain that way forever.

Thank you for taking the time to get to know a different side of my husband, Corey D. Flaum. I respectfully request that the court show as much leniency as possible with respect to his sentencing.

Respectfully,

*Aspoca R Flan*

# EXHIBIT B

The Honorable Brian M. Cogan

May 11, 2023

Re: Corey Flaum

Dear Judge Cogan:

I submit this letter to support Corey Flaum. I have known him since the day he was born as I am his older sister and only sibling. Our parents divorced when he was just 5 years old and I was aged 7. Growing up as children of divorced parents, our lives revolved around a visitation schedule, and Corey was my one constant in life. Even if we fought like typical siblings he was the only person I knew would always be on my side. One would think that as the older sister/younger brother combination that I am the one who keeps our relationship going strong as adults. However, it is Corey who is always the first to call and check in. He is the most devoted uncle to my 3 children. He would never forget their birthdays and his entire family made sure to fly to New York from Florida to celebrate my daughter's bat mitzvah this past November. My three children all play softball/baseball and are so excited to share their victories with Uncle Corey texting him videos of their at bats and pitching statistics.

Corey is also the most devoted son and grandson. I know our mother submitted her own letter. ████████████████████████ Our grandmother lived until her mid-90s and her apartment was nearby Corey's home when he lived in New York. She would always boast about how Corey would come and visit with his toolbox and hang a picture, fix a leaky faucet or change a light bulb. She would call everyone to let them know how he helped. ████████████

███████████████████████████████████████████████████████████████████

As Corey's big sister I am most proud of how devoted and engaged he is as a father to ████ ████████████ After our parents' divorce we were raised solely by our mother. Despite having no daily male role model Corey excels in fatherhood. He is incredibly hands on with his children. During the Covid lockdown Corey and I would exchange stories of helping the kids with their school work and having to relearn it all so we could teach them. Corey also coached ████████████ basketball teams when they lived in New York. Corey thrived coaching not just his sons but the entire team. Corey was always doing fundraisers to ensure everyone on his team could participate no matter their parent's socioeconomic status. He didn't want the inability to pay fees to stop any kid. He truly cared about the team. Corey never misses any event in his children's lives from ████ dance recitals to the school science fair.

Corey is my younger brother, my go to for a shoulder to cry on and he gives amazing advice. I am asking that the Court show leniency at sentencing.

Respectfully,

Sabrina Appelbaum

# EXHIBIT C

The Honorable Brian M. Cogan

**RE: Corey D. Flaum**                                    Date: 5/17/23

Dear Judge Cogan,

I submit this letter to support Corey D. Flaum. I am his mother, and I have known him his entire life.

I raised my son to uphold the values of kindness, goodness, and human decency. He grew up in a family where we understood the importance of passing those traditions and beliefs down through the generations. These generations live on through my son. And throughout his 45 years of life, I have been blessed to see him act upon them with assurance and foresight of challenges to overcome. He is committed to fulfilling one's potential growth, to offer unselfishness of soul and spirit to others, and to have respect for those who came before him. My son also is deeply dedicated to all his family and friends, to me, and gives everlasting devotion and protection to his wife, and to his three children.

Examples of my son's kindness and good nature are too numerous to list, but I can share a few memories that come to mind. When Corey was in elementary school, he played several seasons of little league baseball. I remember one year, Corey was the starting pitcher in the playoff series, and his best friend was on one of the opposing teams. He had had sleepless nights prior to these games, worrying about having to strike out his friend.

When Corey was older, I remember his perseverance shined as a member of the Tennis Team at Hewlett High School. He was the only player who never had a private lesson. And Corey was always a hard worker. His self-discipline to include studying in his busy schedule resulted in an acceptance to the University of Michigan, where he graduated from the business school.

Corey told me once, "aging is a blessing." He maintains contact with his paternal grandmother, Myra, 97 years old, ████████████████ He frequently calls her to say hi and share stories about his family. When visiting New York, he makes sure to see her, in person, to brighten her day. ████████████ ███████ but she will always feel his warmth and love.



It is with my heart filled with love and recalling his aroma of a cleansed child at my chest washing little league uniforms after the games; his academic accomplishments; my hand touching his warmly clutched, as we walked down the aisle towards marriage; my eyes in awe and amazement of how he matured into the man he is today; and his words of celebration and sorrow at life cycle events; that I am humbled and fortunate to have witnessed the journey of my son's life.

I am asking the court to take this into consideration and demonstrate mercy at his hearing.


Respectfully,


*Susan J. Flaum*
Susan J. Flaum                                        Date: 5/17/23

# EXHIBIT D

**The Honorable Brian M. Cogan**

Date: May 11, 2023

Re:     **Corey Flaum**

Dear Judge Cogan,

I submit this letter to support Corey Flaum, who is a remarkable person. I have known him just
shy of three decades, and I know his character well. Having moved to New York City from
North Carolina and endured a difficult marriage, I had the honor of meeting Susan Flaum, his
mother, who was to become my wife and soulmate.

Before Susan and I married, we had talked about having another child. However, upon meeting
Corey, I knew that I had met the son I never had the privilege to have. My time spent with and
observing Corey are beyond expectations.  I met Corey on his first break from Michigan
University, School of Business, where he was a finance major. Even then he and his girlfriend,
(now wife, Alyssa), had a perspective of what they envisioned their family would be.

As Corey and I became closer, we began to discuss sports and I shared with him aspects of what
I did as my responsibilities as a physician. Having been raised and nurtured by his mother, as his
parents were divorced at an early age, Corey had developed a special talent, humor, to
acknowledge his special bond he had with his mother. I clearly remember having dropped a 2-
liter bottle of diet coke, and it had splashed everywhere in the kitchen. Corey witnessed the event
and told me as he walked by, "She must really like you!" As I later learned he knew that Susan
normally would not be so charitable.

He is the family peace maker. From that moment on, Corey and I have continued to share family
occasions with love, joy and laughter. Even as he was becoming an adult, Corey displayed the
ability to comfort and help others in trouble. He never worried about the time or energy that it
required. ██████████ At this solemn time, he stepped up to the plate. Countless times he helped
family and community neighbors, to repair home maintenance issues. Most recently, he spent
endless hours of hard labor and interior decorating, for a residence in Florida for us. Corey's
capabilities exemplify the skills to make a house and home.

Corey has helped his community, in particular during 2013-2019, where he put his love of sports
and family to work. With his children on teams, he coached Syosset Basketball league; Syosset
Travel; and organized and incorporated NY ELITE Basketball, LLC., a member of the Amateur

Athletic Union. He led the players of the team to learn sportsmanship, discipline, importance of team building and how to have a lot of fun. Successful fund-raising activities gave opportunities for all children in the community to participate. His home was an open house. Post-game victories and losses had celebration BBQ's in his backyard. Team players would often have sleep overs. Parents expressed their appreciation to me, for what this opportunity has afforded their children. For Corey and the players, it was not whether you win or lose but how you play the game and lessons learned.

I will never forget, Corey coming towards the family, in the lobby of the hospital, to tell us that he is the father of a healthy baby boy.▇▇▇ He had an indescribable glow of happiness. Today, Corey is the father of three children. The first born is now graduating from high school in a few weeks. He will be beginning his freshman year, this fall at Indiana University.

Corey has always demonstrated an open heart and dedication to his children and their mother by ensuring that they are safe. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ He has always set an example for his children to follow in preparation for their becoming productive, respectful, and caring adults. They have learned to respect others who are less fortunate and to appreciate present experiences they share.

Corey worked very diligently and with forgiveness in his heart to reconcile with his father. He did establish a rapport. He and his family enjoyed times together. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Corey displayed a dedication rarely seen.

Corey has been an inspiration to his mother, sister, and certainly to me. He demonstrates empathy for others and boundless love for friends and family. The world is a much better place because of Corey Flaum and his efforts to be worthy and admirable.

I request that the court show leniency at sentencing.

Respectfully,

Date: May 11, 2023

Carrol T Longshore, MD

# EXHIBIT E

# RICHARD M. HENDLER
### ATTORNEY AT LAW

| ADMITTED IN NY AND NJ | hendlerlawfirm.com |
|---|---|
| CLINICAL PROFESSOR OF LAW IN BUSINESS | |

May 24, 2023

**BY ELECTRONIC MAIL**

The Honorable Brian M. Cogan, U.S.D.J.
United State District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Corey Flaum</u>

Dear Judge Cogan:

I write to you today on behalf of my beloved nephew, Corey Flaum, not only to vouch for his character but also to humbly request the Court's understanding. I hold the utmost respect for the judicial system and the vital role it plays in maintaining law and order. It is with this profound respect in mind that I write this letter, hoping to convey the true depth of my nephew's understanding of his poor judgment and his unwavering commitment to maintain a strong moral compass.

I kindly ask you to consider his character, good nature, and genuine contemplation and remorse in your assessment of this matter, acknowledging that Mr. Flaum is not a threat to the public interest and that he will act responsibly in the years and decades ahead.

My nephew has been an active member of his communities, first in Nassau County for twenty years and more recently for four years in Delay, Florida. He is widely known in the community for his extreme care and courtesy toward others. Moreover, he possesses qualities that are increasingly rare in today's world—genuine appreciation for community and human problems, civility, and kindness. As a devoted family man, he and his wife have worked diligently to raise his three children and support his family including his father-in-law.

As his very close uncle and an attorney, myself, I can attest to the fact that my nephew fully recognizes and comprehends the gravity of his poor judgment and the responsibilities he bears in rectifying his bad actions. He has expressed his deep remorse to me in extensive conversations, understanding of the reasons his moral and lawful compass were misguided and genuinely sought ways to remedy the injury caused. I assure you that he is sincerely sorry for his actions.

Throughout my legal and academic career, I have encountered numerous individuals, and I can confidently state that nephew is one of the most compassionate and good-hearted people I know. His character, demeanor, patience, friendliness, and love for others are exemplary.

As a teacher of ethics, I do not vouch for someone, whether family or not, unless I trust their word and positive actions to understanding and remorse. I respectfully request that the court trust my word in affirming that everything stated in this letter is true and genuine. My nephew pledges his regret and commits himself to doing what is right for the remainder of his life. Given the circumstances, he apologizes and humbly asks for nothing more than forgiveness. I also respectfully request that Court consider this letter as both a personal plea and an appeal on behalf of Corey Flaum, allowing him to continue supporting his family while enabling all parties involved to move forward from this matter and strive, as we all do, to live a life guided by integrity.

While life entails making mistakes, we endeavor to live candidly and honestly, working diligently to rectify those mistakes. I assure you that from this point forward my nephew, having learned from his circumstances, will be nothing short of an honest and law-abiding citizen.

I am confident that my nephew will continue to be a source of goodness and kindness and an asset to my family and his family, friends, and community. I personally thank you for your time and wholeheartedly request your genuine understanding and consideration. May the Court's wisdom guide it in making a compassionate decision.

Sincerely,

*Richard Hendler*

Richard M. Hendler

# EXHIBIT F

## LETTER IN SUPPORT OF COREY FLAUM

The Honorable Brian M. Cogan

Eastern District of New York

May 13th, 2023

**Re:   Corey Flaum**

Dear Judge Cogan:

I am writing this letter in support of Corey Flaum. I met Corey about 18 years ago, when I was nine-years-old and spent my first summer at Tyler Hill Camp, a sleepaway camp in Pennsylvania, where I spent the following fifteen summers and Corey and his family have spent every summer for as long as I've known them.

Corey Flaum is one of the most kindhearted, caring, compassionate individuals I have ever had the good fortune of knowing. ▮

Over the years, Corey became a role model to me in every sense of the word, taking time out of his busy days to ask me about my days, helping me with my homework, driving me to friends' houses, and providing me with a listening ear and a shoulder to lean on when I needed it most. During my high school years, ▮
Corey provided me with the support and stability that I needed to recognize my own potential for success. I can truly say with the utmost certainty that I would not be who I am today without Corey Flaum and his unwavering support, love, and encouragement.

Today, Corey continues to play a crucial role in my life, providing me with guidance and support as I navigate the many challenges that life throws my way, such as helping me develop a

budget after I got my first job post-graduate school, and providing me with a listening ear and a shoulder to cry on ████████████████████████████████████

Corey's completely voluntary, unwavering support and love that he has provided for many years, without expecting anything in return, not only speaks to his outstanding character, but also to his upstanding citizenship and his countless contributions to society and the world around him.

Therefore, I respectfully request that this Court consider this letter and show leniency at sentencing.

Respectfully Yours,

Natalie Perecman

# EXHIBIT G



**KAUAI ENDODONTICS**

JOSEPH H. CHU, DDS

The Honorable Brian M. Cogan,

RE: Corey Flaum

Dear Judge Cogan,

I am writing this letter in support of Corey Flaum, a person whom I have known for 37 years, since our elementary school days. I can attest to his unwavering loyalty, kindness and compassion to his family and friends. Corey has been a pillar of support in my life, always there to lend a helping hand whenever I needed it.

I would not be where I am today without Corey's guidance and advice through our years of friendship. During our high school days, Corey would always be there to help tutor me through science and math classes. In addition, our teenage summers were spent playing basketball and eventually working summer jobs together which ranged from valet parking cars to working at concession stands at beach clubs in Long Island. Being that I didn't obtain my drivers license till late, Corey would always pick me and drop me off at my parents' home without asking. He is always caring and looking after me as if I was his brother.

After college, we lived together in Manhattan, while I attended NYU School of Dentistry. He was an amazing support during this challenging time in my life. He was the perfect roommate. Corey would always make sure our apartment was a quiet and safe environment for my studies. He'd always assist in paying for meals and expenses I otherwise I could not afford. Aside from work, Corey spent this period of his life mostly with his then girlfriend, now wife, Alyssa. During this time, I was fortunate to witness his unconditional love towards Alyssa as I was his best man at their wedding.

I have seen firsthand how Corey cares for his family. He is a devoted husband and father to his three kids, ███████████████ who puts their needs before his own. He has always been there for his loved ones, and is always willing to lend a helping hand whenever someone is in need.

I understand that Corey has found himself in a difficult legal situation, and I implore you to show leniency and mercy in his sentencing. I ask that you take into consideration his strong character and his contributions to his family and friends and that you give him an opportunity to continue making a positive impact on those around him.

Thank you for your time and consideration.

Sincerely,

Joseph Chu

*"Excellence Through Microscopic Endodontics"*

# EXHIBIT H

May 5th, 2023

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: Corey Flaum**

Dear Judge Cogan:

I respectfully submit this letter in support of Corey Flaum. I have known Corey nearly my entire life as we grew up together and have remained very close friends.

Corey and I went to school together from pre-school through high school, went to sleepaway camp together, were in each other's wedding parties and, eventually, lived in the same communities on Long Island as we started families, first in Great Neck and later in the Syosset community. I also know Corey's family quite well as his wife, Alyssa, was also in our graduating class from high school and I have had the pleasure of getting to know his parents, sister and, more recently, Corey's own children over the years. My boys are close in age to Corey's boys and they have become friends as well, which is a pleasure to see.

Over the years, we have experienced life's up and downs, including memorable occasions like accompanying Corey to purchase his first car, getting into and graduating from college, getting married, and having kids

Throughout it all, Corey has always remained a truly amazing friend. If I am stressed about work or concerned about something with the kids or my parents, he always offers a listening ear and helpful advice. He is always thoughtful with his advice and has a way of looking on the bright side of things and offering positive encouragement.

I also know Corey to be the ultimate family man. Corey's parents were divorced at a young age and I was always impressed by how much support he gave to his mother and sister growing up. And, after fast forwarding, I have seen firsthand how much he cares for Alyssa, as well as the continued unconditional love and support he provides to his mother and stepfather and his father-in-law. The whole extended Flaum family has extremely close relationships with each other and it's clear to me that it's Corey in the center of it all, ensuring that everyone is connected and has what they need.

1

He is, simply, doing a great job parenting his own kids day-in and day-out. I have confidence in saying that as I have not only seen it in person, but I have also seen him extend his parenting skills to my own children. Corey patiently taught my older son how to ride a bicycle and helped my younger son develop his basketball skills. And, I have seen him impart his knowledge and advice on all sorts of subjects when we have had the opportunity to take our boys to a sporting event or get together to watch a game on TV (Corey went to the University of Michigan for undergraduate business studies and I attended Michigan for my MBA and other graduate school studies, so we share an affinity for Michigan athletics).

And, Corey didn't limit his coaching (and quasi-parenting) to his kids and my kids as he also served as a basketball coach in the local community as the kids were growing up. In this setting as well, I saw how much he cared about the development of the kids on his team, imparting advice and encouragement every step of the way.

I do hope that this letter gives you a better sense for who Corey is and the positive influence he has been and continues to be on his own family as well as me and my family. And, although we have an especially close relationship, I know that Corey's positive influence and unwavering support extends to his extended family members and other close friends. That's just who he is and I feel lucky that I have grown up with him and continue to have him in my life as a sounding board, confidant and a true friend.

I ask that you show leniency in sentencing Corey. He is simply a good person, a true family man, and a great friend and supporter to so many.

If you have any questions for me, I have provided my contact information below.

Thank you for your time and consideration.

Sincerely,

Neil A. Harrison

2

# EXHIBIT I

May 11, 2023

Honorable Brian M. Cogan
225 Cadman Plaza East
Brooklyn, NY 11201

   **RE: Corey Flaum**

Dear Judge Cogan:

  I submit this letter to support Corey Flaum. I am Corey's business lawyer and friend. I have known Corey for approximately four years, during which time we have worked closely together on many occasions. He works hard to support his family and is compassionate to the needs of his clients. I have witnessed him put the needs of others ahead of his own because he would rather experience hardship than cause another to do so.

  I can also say that Corey is a person of integrity and good moral character, who strives to do things the right way, not the easy way. I am lucky to work with Corey and call him a friend. I respectfully ask the Court to consider these attributes when deciding a sentence for Corey.

      Respectfully,

      James M. Slater

# EXHIBIT J



www.thsh.com | @THSHLAW

Jordan S. Linn



May 9, 2023

**VIA ELECTRONIC MAIL**
The Honorable Brian M. Cogan

                Re:    **Corey Flaum – Letter in Support**

Dear Judge Cogan:

        I respectfully offer this letter in support of Corey Flaum.  I have known him for approximately ten years, and I know his character well.

        Mr. Flaum coached both of my sons in youth basketball for multiple years, and we spent countless hours with Corey and his family up until their move to Florida a few years ago.  Corey took his job as coach very seriously, trying to instill in his players the values of consistent effort, hard work, team comradery and good sportsmanship.  He held the boys to a high standard and encouraged them to have winning expectations and a strong work ethic.

        I believe that Mr. Flaum has good character as evidenced by the fact that he would always be understanding and supportive if any families or players were having personal struggles, and invited players to play (I believe at his own expense) whose families could not afford the costs of travel basketball -- sometimes even picking those children up at their homes and transporting them to practices and games.  He consistently gave my sons the 'tough love' and motivation that you hope to see from a coach of young athletes.

        In my legal practice, I interact with dozens of people every day, and consider myself to be pretty good at gauging the character of colleagues, clients and adversaries.  I have had many in-depth conversations with Corey over the years regarding his young family and my own, as well as our respective relationships with friends and other family members.  My opinion is that Corey Flaum is a good family man, who only wants the best for his family and his community.  I sincerely hope that the Court will see fit to show leniency to Corey in his upcoming sentencing.

        Thank you for your consideration.


                                        Sincerely,


                                        Jordan S. Linn

[1135110-1]